IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARRIAGE HOUSE CONDOMINIUMS GP, INC.** | : | CIVIL ACTION |
| | : | |
| | : | NO. 07-2120 |
| v. | : | |
| | : | |
| **JEANNE T. DERAIMO** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                      **July  8,  2008**

Plaintiff Carriage House Condominiums G.P., Inc. ("Plaintiff") brought this action against Jeanne T. DeRaimo ("Defendant") and Gina-Marie DeRaimo (collectively, "the DeRaimos"),[1] alleging breach of an agreement of sale between the parties for a condominium unit and parking space in Philadelphia, Pennsylvania.  On July 31, 2007, Plaintiff voluntarily dismissed Gina-Marie DeRaimo as a defendant.  Now before the Court is Plaintiff's Motion for Summary Judgment (the "Motion").  For the reasons that follow, the Motion will be denied.

**I. BACKGROUND**

On December 23, 2004, the DeRaimos entered into an Agreement of Sale (the "Agreement") with Plaintiff for the purchase of Unit 5L in 23 A Condominium located at 23 South 23rd Street.  See Compl. ¶ 7; Answer ¶ 7.[2]  Pursuant to Paragraph 3 of the Agreement, the DeRaimos deposited $118,643 into an escrow account at Prudential Fox Roach as a down payment on Unit 5L and a parking space.  See Compl. ¶ 8; Answer ¶ 8.  At the time the Agreement was signed, the conversion of an existing structure into the condominium

---

[1]     Jeanne T. DeRaimo is the mother of Gina-Marie DeRaimo.

[2]     The DeRaimos entered into a separate agreement with Plaintiff to purchase Unit 6L at 23 A Condominium, see Compl. ¶ 7, Answer ¶ 7; that transaction is not at issue in this case.

1

development was ongoing, and Unit 5L had not been built.  See Compl. ¶ 9; Answer ¶ 9.

Paragraph 2 of the Agreement states that "[t]he Premises shall ... include the standard features and other items described on Exhibit B."  Agreement, attached to Motion at Exhibit A and to Defendant's Opposition ("Def's Opp.") at Exhibit 1 (emphasis in original).  Exhibit B includes a "Summary of Features," which lists, *inter alia*, "[h]igh ceilings and expansive room arrangements."  Agreement at Exhibit B, Summary of Features ¶ 1f.  Exhibit B also includes "Outline Specifications" for the condominiums, which state that:

> Ceilings will be painted drywall at approximately 9'-6" in perimeter bedroom and living areas.  Interior areas such as bathrooms, kitchens and closets will generally have slightly lower ceilings of approximately 9'-0".  Some drywall soffits or ceiling height variation may result in these areas to conceal ductwork, sprinkler piping, electrical conduit and wiring, structural beams, drain piping, terrace insulation and to address other conditions as required by the construction documents and field conditions.

Agreement at Exhibit B, Outline Specifications ¶ 2e.

On April 23, 2007, Plaintiff notified Defendant that Unit 5L would be "ready for occupancy at final closing on May 17, 2007."  See Letter dated April 23, 2007, attached to Motion at Exhibit C.  However, on May 14, 2007, counsel for Defendant sent Plaintiff a "formal written notice of a material breach of the Agreement."  Letter dated May 14, 2007, attached to Motion at Exhibit D and to Def's Opp. at Exhibit 4.  Defendant cited Plaintiff's "refus[al] to build the ceilings the proper height in Unit 5L" as the material breach, and demanded the return of the $118,643 deposit plus accrued interest and attorney's fees.  Id.  On May 24, 2007, Plaintiff filed the instant action, alleging that the DeRaimos' refusal to complete the sale constituted a repudiation and breach of the Agreement, and seeking damages for the purported breach.  Compl. ¶¶ 17, 18.

**II. LEGAL STANDARD**

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

**III. ANALYSIS**

Neither party disputes that the ceilings in the bedrooms and living areas of Unit 5L are approximately 8'-9" to 8'-10". See Plaintiff's Memorandum in Support of Summary Judgment ("Pl's Mem.") at 3; Def's Opp. at 4. However, the parties disagree as to whether ceilings of this height violate the Agreement's specification that "[c]eilings will be painted drywall at

3

approximately 9'-6" in perimeter bedrooms and living areas."[3]  Agreement at Exhibit B, Outline Specifications ¶ 2e.  Plaintiff argues that summary judgment is appropriate because the possibility that Unit 5L would not have 9'-6" ceilings was disclosed in the Agreement and agreed to by Defendant.  See Pl's Mem. at 3.  Plaintiff further argues that even if the ceiling height in Unit 5L were to constitute a breach of the Agreement, it would not be a material breach, and the doctrine of substantial performance would protect Plaintiff.  See id. at 4-5.

"In Pennsylvania, a material breach by one party to a contract entitles the non-breaching party to suspend performance."  LBL Skysystems (USA), Inc. v. APG-America, Inc., 2005 WL 2140240, at *27 (E.D. Pa. Aug. 31, 2005) (citing Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459, 467 (Pa. Super. Ct. 2003)).[4]  Thus, if the ceiling heights in Unit 5L constitute a material breach of the Agreement, Defendant was entitled to refuse to complete the sale.  Pennsylvania courts look to the Restatement (Second) of Contracts in determining whether a contractual breach is material.  See, e.g., Active Entm't, Inc. v. Harris Miniature Golf Courses, Inc., 1997 WL 1433809, at *181-82 (Pa. Ct. Com. Pl. Dec. 19, 1997).  Section 241 of the Restatement (Second) of Contracts

---

[3]  As noted previously, Paragraph 2e of the Outline Specifications provides that:

> Ceilings will be painted drywall at approximately 9'-6" in perimeter bedroom and living areas.  Interior areas such as bathrooms, kitchens and closets will generally have slightly lower ceilings of approximately 9'-0".  Some drywall soffits or ceiling height variation may result *in these areas* to conceal ductwork, sprinkler piping, electrical conduit and wiring, structural beams, drain piping, terrace insulation and to address other conditions as required by the construction documents and field conditions. (emphasis added)

To the extent Plaintiff is arguing that the third sentence of this paragraph put Defendant on notice that a variation in the height of the bedroom and living area ceilings was possible, the Court rejects this argument – the phrase "these areas" clearly refers back to the "interior areas" referenced in the second sentence.

[4]  The parties agree that Pennsylvania law applies in this diversity action.

4

provides that the following circumstances are relevant in determining whether a breach is material:

>   (a)   the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>   (b)   the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>   (c)   the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>   (d)   the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>   (e)   the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241; see also Active Entm't, 1997 WL 1433809, at *181-82 (citing Restatement (Second) of Contracts § 241).

"The doctrine of material breach is simply the converse of the doctrine of substantial performance. Substantial performance is performance without a material breach, and a material breach results in performance that is not substantial." Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 317 n.8 (3d Cir. 2001) (quoting Farnsworth on Contracts § 8.16 at 496). The doctrine of substantial performance is "intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent or unimportant omissions or defects." Active Entm't, 1997 WL 1433809, at *182 (quoting First Mortgage Co. of Pa. v. Carter, 452 A.2d 835, 837 (Pa. Super Ct. 1982)). "Whether a breach of contract constitutes a material breach is generally a question of fact for a jury to decide." Haymond v. Lundy, 2001 WL 15956, at *9 (E.D. Pa. Jan. 5, 2001) (citing Forest City Grant Liberty Ass'n v. Genro II, Inc., 652 A.2d 948, 951 (Pa. Super. 1995)). Similarly, "absent a

willful omission, a question of substantial performance is one for the jury, not the court." West Dev. Group, Ltd. v. Horizon Fin., F.A., 592 A.2d 72, 77 (Pa. Super. Ct. 1991).  Thus, the Court will not grant summary judgment unless it concludes that a reasonable jury could find only that Plaintiff's alleged breach was not material.  Cf. Haymond, 2001 WL 15956, at *9 (denying the defendant's motion for summary judgment because a question of material fact existed as to whether the defendant materially breached the contract).

Defendant argues that the ceilings in Unit 5L constitute a material breach and that the doctrine of substantial performance does not apply because the high ceilings promised in the Agreement are "part of what makes a condominium a luxury condominium" and that "if the height of the ceilings were irrelevant, Plaintiff would not boast that the condominiums have 'super high ceilings' and Plaintiff would not have specified the high ceiling heights in the Agreement of Sale it drafted." Def's Opp. at 9.  She further argues that "[t]he ceiling as presently hung alters everything from arched doorways, large furniture, light fixtures and ceiling fans.  Moreover, the vast expanses of space in the bedrooms and [living room] look peculiar with the lower ceiling – certainly not the look for which Defendant bargained." Id.  In addition, she offers sworn testimony that "[t]he height of the ceilings was critically important to [her] which is why [she] insisted that the ceiling height be at least 9 feet 6 inches" and that Plaintiff "was aware that the ceiling height was critically important to [her] as well." Aff. of Jeanne DeRaimo at ¶ 5, attached to Def's Opp. at Exhibit 2.   She also testifies that Plaintiff has refused to raise the ceilings in Unit 5L.  See id. at ¶ 12. Based on these arguments and Defendant's sworn testimony, the Court cannot conclude that a reasonable jury, examining the § 241 factors, could not decide that the ceilings in Unit 5L are a material breach of the Agreement.  Accordingly, summary judgment will not be granted.

**IV. CONCLUSION**

      For the aforementioned reasons, Plaintiff's Motion for Summary Judgment will be denied.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARRIAGE HOUSE CONDOMINIUMS GP, INC.** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 07-2120** |
| v. | : | |
| | : | |
| **JEANNE T. DERAIMO** | : | |

### ORDER

**AND NOW**, this   8th   day of July, 2008, upon consideration of Plaintiff's Motion for Summary Judgment (docket nos. 17, 18), Defendant's Opposition thereto (docket no. 22), and Plaintiff's Reply (docket no. 28), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:


 /s/ Bruce W. Kauffman

BRUCE W. KAUFFMAN, J.